Good morning, Your Honors. Gary Burson for Appellants Esteban Montes-Diaz. This appeal is about the district court's admission and the government's use of prison code of silence expert testimony, not simply to address the testimony of the two inmates who testified at trial, but also for the government to argue inferences based upon inmates that did not testify at trial. We've acknowledged from the outset that this court has sanctioned the use of expert testimony to address witness bias in the context of gang membership. That would be the Hankey and the Takahashi cases. However, there's no case in this court or any other court that I could find that allows the use of this sort of testimony to address bias or to comment on witnesses that never testified at trial. The introduction of the evidence from the government's expert essentially had two improper effects in this case. The first improper effect was to allow the government to argue essentially that but for this code of silence testimony, or this code of silence within the FCI Victor Bill, the government would have been able to call numerous witnesses in its case that would have supported its take on the evidence. Other than but for, look at it the other way. Isn't it proper for the government to explain why it didn't call witnesses? If a jury sees a lot of witnesses to a crime, isn't it proper for government to explain why they're not available? I think it certainly is an argument that the government can make, but when that argument is combined with expert testimony, I think it crosses into a dangerous area where the government is simply using expert testimony to not only argue that other witnesses would have testified in its favor that never testified, but also to vouch for its witnesses that did testify at trial, and in this case, the one witness who did identify Mr. Montes Diaz. So what's wrong with saying, here are a lot of witnesses, the reason they're not testifying, if you have an expert who says the reason that witnesses don't testify is because there's a code of silence? What is wrong with explaining that to a jury, that that's the reason that what would appear to be direct witnesses aren't testifying? I think one of the inherent dangers with that approach is... That's different from saying they would testify in our favor. It's saying this is why they're not testifying. Correct, but I think when you look at this from a practical standpoint, the jury is going to look at the party that introduced the code of silence evidence as probably the party who is being harmed by the existence of the code of silence. Didn't the district court instruct on this point? The district court gave general instructions concerning witness credibility, but did not do the specific instruction that this court noted in Hankey and Takahashi that dealt specifically with this issue. And again, I think there's a serious concern in these sorts of cases when the government puts in this evidence concerning the prison code of silence, and then the issue comes up in an argument concerning, well, all these witnesses saw what happened, they know who did it, but they can't testify because of the code of silence. I think the inference to be made by the jury is that, well, the government is the party that's being harmed by the existence of this code of silence, and therefore these witnesses would have testified in concert with the government's witness who identified Mr. Montes Diaz as one of the assailants. But wait, didn't the victim in this case refuse to identify Mr. Montes Diaz as the perpetrator? Didn't he say, I knew him as a roommate before, and I think he's a nice fellow, but no, I can't identify him. I mean, wasn't the argument directed as much as anything at his testimony that he was practicing this code of silence? I think it was at Delgado, the victim, as your Honor noted, but I think also at Chavez, the witness who initially gave a statement but then later on refused to testify. So I think it went to both government witnesses who took the stand and essentially said, I don't know what happened, I don't remember, or I didn't see it. You're not objecting to that, are you? To the extent that the testimony goes to the witnesses who actually testified? I think it's dangerous, but I think given Hankey and Takahashi, I think that's probably a lot more allowed. Well, it doesn't really matter whether you don't like the law. That is the law, right? It is the law with respect to gang membership. Again, I'm not sure it would apply to a code of silence because, again, a code of silence has inferences that are drawn necessarily based upon the party that introduces that evidence in the first place. And so I think that the gang membership and loyalty and oaths that were addressed... Did the counsel ask the judge to say to the jury, don't give an advantage to the government? All we know is that from a code of silence is that they wouldn't testify, whether it would help the defense or the prosecution? There was no request for a specific limiting instruction in this case. The government argues a couple of points. I'll be brief. First, they say that this evidence was only admitted for the purpose of addressing the two witnesses who testified at trial. I think the record clearly contradicts that. The government wrote in its motions in Lemonet that it wanted this evidence to argue to the jury why there were no more witnesses from the incident called to trial. So I think clearly the government asked this evidence to be introduced not only to address the two witnesses who testified, but also to address the absence of other witnesses. So I think that issue is addressed by the record. Doesn't that go hand in hand, though, with addressing the two who testified and disclaimed any knowledge of this? As I read the record, Mr. Burcham, there were photographs that showed multiple witnesses around the scene of the assault while it was occurring. Are you saying that the government should have called each of them and had them stay mum and then it Or can the explanation of this code of silence suffice to say it would have been an exercise in futility to call the others? I think the problem is not with the number of witnesses called who can't remember anything. I think the problem is with the code of silence evidence in the first place. Whether it's one witness who can't remember or ten, once the government introduces the code of silence itself and then the witnesses take the stand, don't remember anything or don't implicate the defendant, and then the government argues that inference, I think that that's the problem with this evidence and that it creates an undeniable inference that the people who did not testify because of the code of silence would have helped the government's case. I have three minutes. May I retain that for rebuttal? Thank you. May it please the Court, Bonnie Hobbs on behalf of the United States. In order to reach the conclusion that this case should be remanded, the conviction should be reversed and the case should be remanded for a new trial, the defense relies on what in the government's view are four flawed premises. And the first one is that the district court admitted the code of silence evidence specifically for the purpose of allowing the government to argue that but for the code of silence the government could have called numerous additional witnesses in its favor. That is an extent to which the government never went in its rebuttal closing argument. As the Court has alluded to, this case in a prison environment is a very unique environment. And what was unique about this case is that the crime was caught on video. Unlike a gang incident that takes place in the middle of the night in a neighborhood where no one can see what happened, in this case the jury saw what happened on the video and the jury saw numerous inmates milling about, standing watching, sitting at tables throughout the whole first part of the incident that was captured on the video. So the government did say in its response to the defendant's motion in Lemony to preclude the code of silence evidence that not only would the evidence go to the credibility of the two witnesses who would testify at trial, victim Delgado and inmate Chavez, but also would explain the inability of the government to obtain truthful testimony from the numerous additional witnesses who were standing around. At no point, either in arguments before the court, during the trial, or in closing, did the government say that those witnesses would have testified in the government's favor. In fact, the evidence adduced at trial through both Lieutenant Russell and Correctional Counselor Evans is that these witnesses wouldn't have said anything. That was what the code of silence was there to explain. And Lieutenant Russell, when he testified, he said that they conducted mass interviews immediately after the incident in which they isolated all the inmates who had been there and who had witnessed it, and out of those 75 interviews, only one inmate, inmate Chavez, said that he even saw anything. The rest of them said nothing happened as far as they were concerned. And in the video, there were at least four inmates standing around who were named by Lieutenant Russell in his testimony and also by Correctional Counselor Evans in her testimony who should have been able to say that something happened, whether the defendant did it or whether somebody else did it, but they said nothing happened. They couldn't remember an incident at all. And then that brings us to the closing argument, the rebuttal closing argument of the government. And I think it's important that this issue was not mentioned in the government's opening close. It was not until in Defendant Montes Diaz's counsel's closing argument when he alluded to if the code of silence is true, the government is asking you to draw a conclusion from the absence of any evidence, and it could have paraded in all these inmates who were witnesses to the event, and none of them would have said anything, and then the government could have proved its case by that. So it wasn't until that issue was brought up in the defense's closing argument that the government then in rebuttal said what I think is very important, and I think the defense is taking one statement of that rebuttal out of context, because before the part where the government said they know what happened and they know who did it, the government said the reason we brought in C.D. Cole to testify was to make sure you understood what this environment is like, and there are unique characteristics in a prison environment. And the code of silence is one of those unique characteristics, and folks just don't ignore it. The government also said prior to the statement that is focused upon in the defendant's brief, we didn't bring them in because we knew what would happen, because we interviewed them, and we interviewed everybody that was in there during the lockdown. And they all said, with the exception of inmate Chavez, didn't see anything, never saw a thing. So you think those witnesses were equally unavailable to both sides? I think that's correct, and I think that's right. Then why did the government argue that if Mr. Klein had said there was a mistake, and that's his issue, basically his primary issue, that it's not really on his dias, any one of those inmates could have been subpoenaed in, or all of them, to testify to explain who was or who was not the perpetrator of the attack. I think the government was responding to what Defendant Montes Diaz's counsel said, and the government was referring to the defendant also having subpoena power to have brought in these people, but the defendant probably didn't do it for the same reason. He put out a code of silence that these witnesses would not testify, and then he said, well, why didn't the defendant bring them in? Yes, he did say that, Your Honor, and at that point... He said, they say, there they were, they saw it, they had an opportunity to identify it. And then, you know, he said, why didn't the defense produce it? I think he was, it may have been an inartful way of addressing what the defense counsel said. They were saying the government should have prayed these people in. Why didn't the government do it? And then the government was saying, well, why didn't the defense do it? And at that point, the defense counsel did raise an objection that the government was implying that they had a burden to put on testimony and an obligation to bring in witnesses. The district court addressed that issue, and that issue was not raised on appeal. So I believe that what the defense has done is take certain comments, certain sentences out of context, but when you look at the entire rebuttal closing argument, I don't think that there is necessarily an inference that would have had to be made by the jury in order for this conviction to be reversed, and that is that those witnesses would have come in and testified for the government. The jury could equally have inferred those witnesses wouldn't have testified for anybody. The jury could have inferred those witnesses might have said that somebody else did it because they're afraid of Defendant Montes Dias. There are all kinds of inferences that the jury could have made here. What's the gist of the Code of Silence expert testimony? Is it simply that witnesses won't testify or that they won't testify against another inmate? This is what Special Investigative Agent C.D. Cole said. He said the Code of Silence is something that's universally accepted within the correctional environment, that testifying against other inmates in an official forum is very, very rare, and that inmates who provide information against other inmates and then the information that these inmates have provided information becomes available to the general population means that the inmates who have provided the information are immediately in big trouble. The suggestion then that the defense could have called the other witnesses wasn't necessarily in conflict with the Code of Silence expert testimony. Presumably, if called by the defense, they wouldn't be testifying against another inmate. That's correct. Wouldn't they be identifying another inmate who committed the crime if they testified to the defense? They could have said, I suppose, someone did it, but it wasn't him. Well, I saw somebody do it, they have to say. This is what the government says, they saw who did it. That's correct. Well, when they say, I saw who did it, the next question is, who was it? Then what do they say? They'd say, I saw someone do it, but I can't remember who it was. Well, then they can't remember it wasn't this fellow either. They don't remember who it was. That's correct. They can't remember anything. Then that wouldn't help. But if they're going to help the defendant, they would have to testify that some other prisoner did it, and they'd be breaking the Code of Silence. That's correct. And really, that, I guess, is an inference the jury could have made. But in light of the facts that were, the testimony that was adduced at trial, and what the government said in its rebuttal, the evidence would have been, I didn't remember anything happening. And that's indeed what inmate Chavez said. I remember something happened, but I don't remember what it was. He didn't even concede that there was an assault right in front of him. So I just don't think that the jury, I think the point that the defense makes over and over and over again, that the government was using this evidence to explain why it didn't have more witnesses in support of its case, why the government could have called numerous witnesses in its favor, implying that the government could have called numerous witnesses to the incident that would have testified in support of its theory that defendant and co-defendant were the perpetrators of the assault. The government never said any of those things. The most it was doing was replying to what the defendant's counsel had raised in rebuttal. All right, thank you. The time is expired. Not only did the government say once in its rebuttal closing argument that the defense could have brought in these witnesses if they would have differed from the testimony of Counselor Evans, it said it twice. I think, Judge Reinhart, you're on the money that if this was simply the code of silence evidence that the government thinks it was, there was never any reason for the government to make those arguments in its rebuttal closing argument. Defense counsel, in his argument, talked about the illogical nature of the government's use of the code of silence with regard to Chavez and Delgado, but the defense counsel never got into what would additional witnesses have said, why weren't they brought into court. He simply said if the government's theory is correct, then the government can simply call any witness to the stand. They don't remember anything or didn't see anything, and then the government can argue, well, that witness favors the government. So the defense counsel was not addressing what was brought up in the rebuttal closing argument. I don't quite understand that argument. The government didn't do that. The government just said this explains why the other witnesses you saw, they have a code of silence. They're not here. And it also said twice. They didn't produce witnesses and say these people saw it. They're invoking a code of silence. Therefore, you can infer that the defendant did it. That would have been a problem. But they didn't do that. I think they crossed that line when they said. Where? How? When they said twice during closing argument that the last sentence in the passage cited by the government and us, those are inmates that could have been called if we made a mistake. That sentence right there says to the jury that these people. That's somewhat inconsistent with the argument that there's a code of silence. And that's the problem. Is it a code of silence only as to the person on trial, or is it a general code of silence where an inmate can't take the stand at all at trial and testify? And that's one of the problems with this evidence. It's broad. It has inferences that really cannot be erased given who introduces the code of silence evidence. And we think that the district court severely abused its discretion in not limiting this evidence simply to the testimony and the credibility. But the district court did tell the jury that it was not your, the defense's, burden to produce witnesses. That addressed burden shifting, which I think clearly the government was doing at that point. But we still have the vouching problem. We still have the government using these nonexistent witnesses combined with the code of silence to say if there was evidence that contradicted Counselor Evans' identification of Mr. Montes Diaz, it would have been brought here in court. And so while the burden shifting was addressed by the district court, and I think it was well done by the district court, we still have the vouching problem, which was brought about by the government's statements twice during the rebuttal closing argument that if they had witnesses that contradicted the government's case, why weren't they in court? Thank you, Counselor. Thank you very much. The case just argued will be submitted.
judges: Reinhardt, Bybee, Burns